**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **DURAMAX HOLDINGS LLC d/b/a** | ) | **CASE NO. 26-30653** |
| **OTTO ENVIRONMENTAL SYSTEMS,** | ) | **CHAPTER 7** |
| | ) | |
| **DEBTOR.** | ) | |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

COMES NOW Ally Bank, pursuant to 11 U.S.C. §362(d), and moves for relief from the automatic stay herein as follows:

1. The Order For Relief was entered in this involuntary Chapter 7 case on June 9, 2026.

VEHICLE 1
2025 RAM PROMASTER 3500, VIN 3C6MRVJG8SE510338

2. As of the petition date, the Debtor was the owner of a 2025 Ram ProMaster 3500, VIN 3C6MRVJG8SE510338 ("Vehicle #1"), purchased and financed pursuant to the terms of an installment sales contract ("Contract #1") dated May 13, 2025. Contract #1 was subsequently assigned to Ally Bank and Ally Bank now has the right to enforce Contract #1. See Exhibits 1 and 2.

3. Under the terms of Contract #1, Ally Bank has a senior security interest and first lien on Vehicle #1 that it duly perfected. See Exhibits 3 and 4.

4. The outstanding principal balance due under Contract #1 is $50,271.06, while the J.D. Power average trade-in (liquidation) value of Vehicle #1 is $35,350.00. See Exhibit 5.

VEHICLE 2
2025 RAM PROMASTER 3500, VIN 3C6MRVJG2SE510335

5. As of the petition date, the Debtor was also the owner of a 2025 Ram ProMaster 3500, VIN 3C6MRVJG8SE510338 ("Vehicle #2"), purchased and financed pursuant to the terms of an installment sales contract ("Contract #2") dated May 13, 2025. Contract #2 was subsequently assigned to Ally Bank and Ally Bank now has the right to enforce Contract #2. See Exhibits 6 and 7.

6. Under the terms of Contract #2, Ally Bank has a senior security interest and first lien on Vehicle #2 that it duly perfected. See Exhibits 8 and 9.

7. The outstanding principal balance due under Contract #2 is $50,271.06, while the J.D. Power average trade-in (liquidation) value of Vehicle #2 is $35,350.00. See Exhibit 10.

8. Under these circumstances, Ally Bank does not have adequate protection of its security interest in these Vehicles, and thus there is good cause to grant it relief from the automatic stay under 11 U.S.C. §362(d) to recover and liquidate these Vehicles.

9. If Ally Bank is not permitted to foreclose its security interest in these Vehicles, it will suffer irreparable injury, loss and damages.

10. Due to the nature of the Vehicles as being depreciating assets that are easily moved, easily secreted and easily damaged, Ally Bank also hereby requests that any order granting the relief requested herein be immediately effective.

WHEREFORE, Ally Bank moves the Court for the following relief:

1. The Court enter an Order pursuant to 11 U.S.C. §362(d) lifting the automatic stay to permit Ally Bank to foreclose its security interest in these Vehicles.

2. The 14-day stay provided for in Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure be waived and the lifting of the automatic stay be effective immediately.

3. The Debtor be ordered to release the Vehicles to Ally Bank or advise it of the location of the Vehicles and the name, address, and telephone number of any third party in possession of same.

4. Ally Bank have such other and further relief as to the Court seems just and proper.

This the 2nd day of September, 2026.

KIRSCHBAUM, NANNEY, KEENAN & GRIFFIN, P.A.

By: s/ *Pamela P. Keenan*

Pamela P. Keenan
N.C. State Bar No. 20328
Attorneys for Ally Bank
PO Box 19766
Raleigh, NC 27619
Telephone: (919) 848-0420
Facsimile: (919) 848-8755
Email: pkeenan@kirschlaw.com

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **DURAMAX HOLDINGS LLC d/b/a OTTO ENVIRONMENTAL SYSTEMS,** | ) | **CASE NO. 26-30653** |
| | ) | **CHAPTER 7** |
| | ) | **NOTICE OF OPPORTUNITY FOR HEARING** |
| **DEBTOR.** | ) | **(No-Protest Notice: No Hearing Will Be Held Unless Request For Hearing Is Filed)** |
| | ) | |

**TAKE NOTICE** that Ally Bank has filed papers with the Court for relief from the automatic stay. A copy of these papers is included with this Notice.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant the relief sought in the attached motion, or if you want the Court to consider your views on the motion, then within fourteen (14) days of the filing date hereof, you or your attorney must do three (3) things:

1. **File with the Court a written response requesting that the Court hold a hearing and explaining your position. File the response at:**

   U.S. Bankruptcy Court
   Charles R. Jonas Federal Building
   Western District of North Carolina
   401 West Trade Street, Suite 2500
   Charlotte, NC 28202

If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

2. **On or before the date stated above for written responses, you must also mail or fax a copy of your written response to:**

   Pamela P. Keenan
   Kirschbaum, Nanney, Keenan & Griffin, P.A.
   PO Box 19766
   Raleigh, NC 27619-9766
   Facsimile: (919) 848-8755

Cole Hayes
601 S. Kings Drive
Suite F PMB #411
Charlotte, NC 28204

3. **Attend the hearing scheduled for October 15, 2026, at 9:30 a.m.,** in Courtroom 2B of the United States Bankruptcy Court located in the Charles R. Jonas Federal Building at 401 West Trade Street, Charlotte, NC 28202.

If you or your attorney do not take these steps, **A HEARING WILL NOT BE HELD**, and the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief without holding a hearing.

This the 2nd day of September, 2026.

KIRSCHBAUM, NANNEY, KEENAN & GRIFFIN, P.A.

By: /s/*Pamela P. Keenan*

Pamela P. Keenan
NC State Bar No. 20328
Attorneys for Ally Bank
PO Box 19766
Raleigh, NC 27619-9766
Telephone: (919) 848-0420
Facsimile: (919) 848-8755
Email: pkeenan@kirschlaw.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, she served a copy of the foregoing on the parties in interest either electronically or by depositing copies of same in a depository under the exclusive care and custody of the United States Postal Service, in a postage-paid envelope, addressed as follows:

Duramax Holdings LLC d/b/a Otto Environmental Systems
12700 General Drive
Charlotte, NC 28273

Charles M. Ivey, III
PO Box 3324
Greensboro, NC 27402

Cole Hayes
Chapter 7 Trustee
601 S. Kings Drive
Suite F PMB #411
Charlotte, NC 28204

Shelley Able
Bankruptcy Administrator
401 W. Trade Street, Suite 2400
Charlotte, NC 28202

This the 2nd day of September, 2026.

/s/*Shaun Wharton*
Shaun Wharton
Legal Assistant

LAW 553-PA-ARB-eps 4/23 EXHIBIT 1

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| DURAMAX HOLDINGS LLC<br>12700 GENERAL DRIVE<br>CHARLOTTE, NC 28273 MECKLENBURG<br>Cell: [redacted]<br>Email: | NA<br>Cell: NA<br>Email: NA | SANDS CHRYSLER JEEP DODGE<br>501 N WEST END BOULEVARD<br>QUAKERTOWN, PA 18951 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2025 | RAM PROMASTER 3500 | | 3C6MRVJG8SE510338 | Personal, family, or household unless otherwise indicated below<br>☒ business<br>☐ agricultural ☐ NA |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 1000.00 is |
|---|---|---|---|---|
| 13.490 % | $ 26243.32 | $ 56556.68 | $ 82800.00 | $ 83800.00 |

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 1150.00 | MONTHLY beginning 06/12/2025 |
| NA | $ NA | NA |
| | NA | |

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, the charge will be 2% of the part of the payment that is late.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information, including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term NA Mos.

NA
Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X NA

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Returned Check Charge:** You agree to pay the costs we actually pay to others if any check you give us is dishonored.

**If you do not meet your contract obligations, you may lose the vehicle.**

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X ______ Co-Buyer Signs X NA

Buyer Signs X ______ Co-Buyer Signs X NA [redacted]



[redacted]

**ITEMIZATION OF AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)**

| | | | | |
|---|---|---|---|---|
| 1 Cash Price | | | | |
| Vehicle | | | $ 54975.00 | |
| Accessories and Installation | | | $ NA | |
| Government Taxes | | | $ 1663.56 | |
| Vehicle Delivery | | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| | | | $ 56638.56 | (1) |
| 2 Total Downpayment = | | | | |
| Trade-In NA (Year) NA (Make) NA (Model) | | | | |
| Trade-In NA (VIN) | | | | |
| Gross Trade-In Allowance | | | $ NA | |
| Less Pay Off Made By Seller to NA | | | $ NA | |
| Equals Net Trade In | | | $ NA | |
| + Cash NA | | | $ NA | |
| + Other REBATE(S) | | | $ 1000.00 | |
| + Other NA | | | $ NA | |
| + Other NA | | | $ NA | |
| (If total downpayment is negative, enter "0" and see 4H below) | | | $ 1000.00 | (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | | $ 55638.56 | (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf | | | | |
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies | | | | |
| Life | Term NA | $ NA | | |
| Disability | Term NA | $ NA | $ NA | |
| B Other Optional Insurance Paid to Insurance Company or Companies | | | | |
| (Describe) NA | Term NA | | $ NA | |
| (Describe) NA | Term NA | | $ NA | |
| C Official Fees Paid to Government Agencies | | | | |
| to NA | for NA | | $ NA | |
| to STATE OF NC | for P.A. TIRE FEE | | $ 5.00 | |
| to STATE OF NC | for LICENSE PLATE FEE | | $ 38.00 | |
| D Optional Gap Contract | | | $ NA | |
| E Government Taxes Not Included in Cash Price | | | $ NA | |
| F Government License and/or Registration Fees | | | | |
| ON-LINE REG FEE/License and Registration | | | $ 298.37 | |
| G Government Certificate of Title Fees | | | | |
| (includes $ 33.00 security interest recording fee) | | | $ 99.75 | |
| H Other Charges (Seller must identify who is paid and describe purpose) | | | | |
| to NA | for Prior Credit or Lease Balance | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to SANDS CHRYSLER JEEP DODGE | for DOCUMENTARY FEE | | $ 477.00 | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| to NA | for NA | | $ NA | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | | $ 918.12 | (4) |
| 5 Amount Financed (3 + 4) | | | $ 56556.68 | (5) |
| 6 Finance Charge | | | $ 26243.32 | (6) |
| 7 Total of Payments Time Balance (5 + 6) | | | $ 82800.00 | (7) |

Buyer Signs X [signature] Co-Buyer Signs X NA

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

## Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

Credit Life $ NA

Credit Disability $ NA

Insurance Company Name NA

NA

Home Office Address NA

NA

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life insurance or credit disability insurance provides. See the policies or certificates for coverage limits or other terms and conditions.

## Other Optional Insurance

☐ NA Type of Insurance — NA Term

Premium $ NA

Description of Coverage NA

NA

Insurance Company Name NA

NA

Home Office Address NA

NA

☐ NA Type of Insurance — NA Term

Premium $ NA

Description of Coverage NA

NA

Insurance Company Name NA

NA

Home Office Address NA

NA

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X NA — NA
Buyer Signature — Date

X NA — NA
Co-Buyer Signature — Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

[redacted] 

[redacted]

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      - The vehicle and all parts or goods put on it;
      - All money or goods received (proceeds) for the vehicle;
      - All insurance, maintenance, service, or other contracts we finance for you; and
      - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more, or (ii) a semitrailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
      If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      - You do not pay any payment on time;
      - You give false or misleading information during credit application;
      - You start a proceeding in bankruptcy or one is started against you or your property; or
      - You break any agreements in this contract.

      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs a court awards us.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.
      If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.
      If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

Buyer Signs X [signature] Co-Buyer Signs X NA [redacted] 

[redacted]

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

h. **Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement: You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).**

4. **WARRANTIES SELLER DISCLAIMS**

The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does <u>not</u> apply at all if you bought the vehicle primarily for personal, family, or household use.

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **SERVICING AND COLLECTION CONTACTS**

In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.

You agree that you will, within a reasonable time, notify us of any change in your contact information.

7. **RIGHT TO RECEIVE STATEMENT OF ACCOUNT**

**Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.**

8. **ADDITIONAL RIGHTS**

**If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.**

9. **APPLICABLE LAW**

Federal law and the law of the state of Pennsylvania apply to this contract.

10. **NEGATIVE CREDIT REPORT NOTICE**

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

Buyer Signs X ____________ Co-Buyer Signs X NA ____________ [redacted]



[redacted]

## ARBITRATION PROVISION

**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before NA, Year NA. SELLER'S INITIALS NA

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X [signature] Co-Buyer Signs X NA

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.

**See the rest of this contract for other important agreements.**

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.**

Buyer Signs X [signature] Date 05/13/25 Co-Buyer Signs X NA Date NA

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X [signature] Date 05/13/25 Co-Buyer Signs X NA Date NA

Buyer Printed Name DURAMAX HOLDINGS LLC Co-Buyer Printed Name NA

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name BRIAN F COLL Title CEO

Co-Buyers and Other Owners.— A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X NA Address NA

Seller signs SANDS CHRYSLER JEEP DODGE Date 05/13/25 By X [signature] Title FINANCE

Seller assigns its interest in this contract to ALLY FINANCIAL (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse ☒ Assigned without recourse ☐ Assigned with limited recourse

Seller SANDS CHRYSLER JEEP DODGE

By X [signature] Title FINANCE

[redacted]

[redacted] 

EXHIBIT 2

Ally Proprietary

## CONFIRMATION OF ASSIGNMENT OF RETAIL INSTALLMENT SALE CONTRACT

WHEREAS, on of May 13th, 2025, Duramax Holdings Llc ("Customer") entered into that certain Retail Installment Sale Contract ("Contract") with Sands Chrysler Jeep Dodge ("Dealership") for the sale and financing of a 2025 Ram Pro Master 3500, VIN # 3C6MRVJG8SE510338 ("Vehicle"); and

WHEREAS the Dealership thereatfer sold and assigned its interest in the Contract to Ally Financial INC. and

THEREAFTER, Ally Financial INC. did assign all of its right, title and interest in and to the Contract to Ally Bank aka Ally Capital Corp. aka Ally Bank Corp. effective as of the date of the Contract

AIS PORTFOLIO SERVICES, LLC, AS AUTHORIZED AGENT FOR ALLY FINANCIAL INC.

By: Paul Tangen
*(Signature)*

Name: Paul Tangen
*(Print Name of Signatory)*

Title: Its Authorized Agent

Date: 8/17/26

EXHIBIT 3

Execution Copy

# LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, Ally Bank a/k/a Ally Bank Corp. and Ally Capital Corp. (the "Company") does hereby make, constitute and appoint Ally Financial Inc. and Ally Servicing LLC (collectively the "Servicer") as its true and lawful attorney-in-fact, with full power of substitution, with respect to (i) all retail installment sale contracts, lease agreements, and loans serviced and administered by said attorney-in-fact for the benefit of Company, (ii) the collateral securing such retail installment sale contracts and loans and the vehicles related to such lease agreements, (iii) all security documents related to such contracts, loans and leases, and (iv) all payments and proceeds with respect to the foregoing (collectively, the "Property"), (a) to sign, acknowledge, file, appear as lien holder on, in the name, place and stead of Company, all certificates, documents and instruments relating to the Property, including, but not limited to, any instrument of assignment, certificate of title, notice of lien, assignment of lien, application for a certificate of title or duplicate of a certificate of title, application to register or transfer title, document to effect the notation of a lien upon a certificate of title or the assignment of such a lien, notice of any such assignment, application to register or transfer the rights as secured party under any policy of insurance, insurance claim, demand or request for premium refund, bankruptcy proof of claim, claim or demand against any dealer or against any person who may have an obligation to Company pursuant to or with respect to the Property, affidavit of repossession, bill of sale, notice of sale, lien release and odometer statement; (b) to authorize and consummate the sale and disposition of any part of the Property; (c) to collect and receive proceeds relating to or with respect to the Property; (d) to commence or participate, in the Servicer's own name or in the name of Company, a legal proceeding related to the Property under the Agreement, and in connection with any such proceeding to execute and deliver in the Servicer's or Company's name any notices, demands, claims, complaints, responses, affidavits or other documents or instruments; and (e) further as said attorney-in-fact may deem fit and proper to perfect the right, title and interest of Company in any part of the Property.

The undersigned further hereby gives and grants unto said attorney-in-fact full power and authority to do and perform every act necessary and proper to be done in the exercise of any of the foregoing powers as fully as the undersigned might or could do if personally present.

The undersigned further ratifies the actions taken by said attorney-in-fact in connection with the servicing and administration of retail installment sale contracts, loans and lease agreements by said attorney-in-fact prior to the execution date below for the benefit of Company.

This Power of Attorney shall continue in effect until superseded by a newer power of attorney between Company and Servicer or until revoked in writing by the undersigned or another authorized representative of Company. Anyone to whom this Power of Attorney is presented may rely upon it without further inquiry of the undersigned. A photocopy of this Power of Attorney shall have the same effect as an original, manually signed and acknowledged counterpart of this Power of Attorney.

IN WITNESS WHEREOF, the undersigned has executed this instrument this 28th day of January, 2020.

Ally Bank

By: ______________________
Name: Jeffrey A. Belisle
Title: Secretary

Execution Copy

ACKNOWLEDGMENT

STATE OF MICHIGAN )
) ss.
COUNTY OF WAYNE )

On this 28th day of January, 2020, before me personally appeared Jeffrey A. Belisle, who acknowledged to me to be an officer and authorized representative of the above legal entity, and that he, as such officer and authorized representative, being fully authorized to do so, executed the foregoing instrument for the purposes therein contained as the free act and deed of said legal entity, and as his free act and deed as an officer and authorized representative of said legal entity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

DONNA M. DICICCO
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES May 25, 2025
ACTING IN COUNTY OF WAYNE

Donna M. DiCicco
Notary Public
My Commission expires: ____________

EXHIBIT 4

PDP ELECTRONIC TITLE DOCUMENT

ELT*NC : ELT - NORTH CAROLINA
Title #: 0558251963039 Title Type :
Issue Date: 7/23/2025 Lic/Tag/Control #:

VIN . . . . . . . : 3C6MRVJG8SE510338

Vehicle Info. . . : 2025 RAM

Odometer Reading : 000000000
Date . :
Status :

Owner Information . : DURAMAX HOLDINGS LLC
Co-Owner . . . . . . :

Owner address . . . . : 12700 GENERAL DR

CHARLOTTE
NC 282736415

Lienholder Information: ALLY FINANCIAL
PO BOX 8132

COCKEYSVILLE
MD 210308132

2nd Lienholder Name :

ELT Sent Date . . . . . : 7/23/2025
Lien Type . . . . . . . : [redacted]
Owner Driver License# :

Brand code . . . . . :

Release name . . . . :
Release address 1 :
Rel City/State/Zip : ,

[redacted]

EXHIBIT 5

# J.D. POWER

08/17/2026

J.D. POWER Used Cars/Trucks

**Vehicle Information**

| | |
|---|---|
| Vehicle : | 2025 Dodge Commercial ProMaster 3500 159" W.B. High Roof Ext. |
| Region : | Southeastern |
| Period : | August, 2026 |
| VIN : | 3C6MRVJG8SE510338 |
| Mileage : | 51000 |

**J.D.POWER Used Cars/Trucks Values**

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Weekly Auction** | | | | |
| **Weekly Used** | | | | |
| Rough Trade-In | $33250.00 | $0 | 0 | $33250.00 |
| Average Trade-In | $35350.00 | $0 | 0 | $35350.00 |
| Clean Trade-In | $37450.00 | $0 | 0 | $37450.00 |
| Clean Retail | $41650.00 | $0 | 0 | $41650.00 |

**Selected Options**

| Trade-In/Loan | Retail |
|---|---|

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D. Power

LAW 553-PA-ARB-eps 4/23 EXHIBIT 6

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| DURAMAX HOLDINGS LLC<br>12700 GENERAL DRIVE<br>CHARLOTTE, NC 28273 MECKLENBURG<br>Cell: [redacted]<br>Email: | NA<br>Cell: NA<br>Email: NA | SANDS CHRYSLER JEEP DODGE<br>501 N WEST END BOULEVARD<br>QUAKERTOWN, PA 18951 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2025 | RAM PROMASTER 3500 | | 3C6MRVJG2SE510335 | Personal, family, or household unless otherwise indicated below<br>☒ business<br>☐ agricultural ☐ NA |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 1000.00 is |
|---|---|---|---|---|
| 13.490 % | $ 26243.32 | $ 56556.68 | $ 82800.00 | $ 83800.00 |

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 1150.00 | MONTHLY beginning 06/12/2025 |
| NA | $ NA | NA |
| | NA | |

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, the charge will be 2% of the part of the payment that is late.

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term NA Mos.

NA
Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X NA

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Returned Check Charge:** You agree to pay the costs we actually pay to others if any check you give us is dishonored.

**If you do not meet your contract obligations, you may lose the vehicle.**

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X [signature] Co-Buyer Signs X NA

Buyer Signs X [signature] Co-Buyer Signs X NA



Non-Authoritative Copy [20250529]

**ITEMIZATION OF AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)**

1 Cash Price

| | | | |
|---|---|---|---|
| Vehicle | | | $ 54975.00 |
| Accessories and Installation | | | $ NA |
| Government Taxes | | | $ 1663.56 |
| Vehicle Delivery | | | $ NA |
| to NA | for NA | | $ NA |
| to NA | for NA | | $ NA |
| to NA | for NA | | $ NA |
| to NA | for NA | | $ NA |
| to NA | for NA | | $ NA |
| to NA | for NA | | $ NA |
| to NA | for NA | | $ NA |
| to NA | for NA | | $ NA |
| | | | $ 56638.56 (1) |

2 Total Downpayment =

Trade-In NA (Year) NA (Make) NA (Model)

Trade-In NA (VIN)

| | | |
|---|---|---|
| Gross Trade-In Allowance | | $ NA |
| Less Pay Off Made By Seller to | NA | $ NA |
| Equals Net Trade In | | $ NA |
| + Cash | NA | $ NA |
| + Other | REBATE(S) | $ 1000.00 |
| + Other | NA | $ NA |
| + Other | NA | $ NA |
| (If total downpayment is negative, enter "0" and see 4H below) | | $ 1000.00 (2) |

3 Unpaid Balance of Cash Price (1 minus 2) $ 55638.56 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf

A Cost of Optional Credit Insurance Paid to Insurance Company or Companies

Life Term NA $ NA

Disability Term NA $ NA — $ NA

B Other Optional Insurance Paid to Insurance Company or Companies:

(Describe) NA Term NA $ NA

(Describe) NA Term NA $ NA

C Official Fees Paid to Government Agencies

| | | |
|---|---|---|
| to NA | for NA | $ NA |
| to STATE OF NC | for P.A. TIRE FEE | $ 5.00 |
| to STATE OF NC | for LICENSE PLATE FEE | $ 38.00 |

D Optional Gap Contract $ NA

E Government Taxes Not Included in Cash Price $ NA

F Government License and/or Registration Fees

ON-LINE REG FEE/License and Registration $ 298.37

G Government Certificate of Title Fees

(Includes $ 33.00 security interest recording fee) $ 99.75

H Other Charges (Seller must identify who is paid and describe purpose)

| | | |
|---|---|---|
| to NA | for Prior Credit or Lease Balance | $ NA |
| to NA | for NA | $ NA |
| to NA | for NA | $ NA |
| to NA | for NA | $ NA |
| to SANDS CHRYSLER JEEP DODGE | for DOCUMENTARY FEE | $ 477.00 |
| to NA | for NA | $ NA |
| to NA | for NA | $ NA |
| to NA | for NA | $ NA |
| to NA | for NA | $ NA |
| to NA | for NA | $ NA |

Total Other Charges and Amounts Paid to Others on Your Behalf $ 918.12 (4)

5 Amount Financed (3 + 4) $ 56556.68 (5)

6 Finance Charge $ 26243.32 (6)

7 Total of Payments-Time Balance (5 + 6) $ 82800.00 (7)

Buyer Signs X LAH Co-Buyer Signs X NA

**Insurance:** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

**Optional Credit Insurance**

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

Credit Life $ NA

Credit Disability $ NA

Insurance Company Name NA

NA

Home Office Address NA

NA

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life insurance or credit disability insurance provides. See the policies or certificates for coverage limits or other terms and conditions.

**Other Optional Insurance**

☐ NA (Type of Insurance) NA (Term)

Premium $ NA

Description of Coverage NA

NA

Insurance Company Name NA

NA

Home Office Address NA

NA

☐ NA (Type of Insurance) NA (Term)

Premium $ NA

Description of Coverage NA

NA

Insurance Company Name NA

NA

Home Office Address NA

NA

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X NA — Buyer Signature — NA Date

X NA — Co-Buyer Signature — NA Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**



Non-Authoritative Copy (20250520)

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      - The vehicle and all parts or goods put on it;
      - All money or goods received (proceeds) for the vehicle;
      - All insurance, maintenance, service, or other contracts we finance for you; and
      - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more, or (ii) a semitrailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
      If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      - You do not pay any payment on time;
      - You give false or misleading information during credit application;
      - You start a proceeding in bankruptcy or one is started against you or your property; or
      - You break any agreements in this contract.

      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs a court awards us.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.
      If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.
      If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

Buyer Signs X ____[signature]____ Co-Buyer Signs X ____NA____



Non-Authoritative Copy (20250520)

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

h. **Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement: You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).**

4. **WARRANTIES SELLER DISCLAIMS**

The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **SERVICING AND COLLECTION CONTACTS**

In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.

You agree that you will, within a reasonable time, notify us of any change in your contact information.

7. **RIGHT TO RECEIVE STATEMENT OF ACCOUNT**

**Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.**

8. **ADDITIONAL RIGHTS**

**If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.**

9. **APPLICABLE LAW**

Federal law and the law of the state of Pennsylvania apply to this contract.

10. **NEGATIVE CREDIT REPORT NOTICE**

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

Buyer Signs X Lph Co-Buyer Signs X NA



Authoritative Copy [20250520]

**ARBITRATION PROVISION**

**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before NA, Year NA. SELLER'S INITIALS: NA

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X [signature] Co-Buyer Signs X NA

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.

**See the rest of this contract for other important agreements.**

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.**

Buyer Signs X [signature] Date 05/13/25 Co-Buyer Signs X NA Date NA

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X [signature] Date 05/13/25 Co-Buyer Signs X NA Date NA

Buyer Printed Name DURAMAX HOLDINGS LLC Co-Buyer Printed Name NA

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name BRIAN F COLL Title CEO

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X NA Address NA

Seller signs SANDS CHRYSLER JEEP DODGE Date 05/13/25 By X [signature] Title FINANCE

Seller assigns its interest in this contract to ALLY FINANCIAL (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse ☒ Assigned without recourse ☐ Assigned with limited recourse

Seller SANDS CHRYSLER JEEP DODGE

By X [signature] Title FINANCE

LAW FORM NO. 553-PA-ARB-eps (REV. 4/23)
©2023 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.



Authoritative Copy [20250529]

EXHIBIT 7

CONFIRMATION OF ASSIGNMENT OF RETAIL
**INSTALLMENT SALE CONTRACT**

WHEREAS, on or May 13, 2025, DURAMAX HOLDINGS LLC ("Customer") entered that certain Retail Installment Sale Contract ("Contract") with SANDS CHRYSLER JEEP DODGE ("Dealership") for the sale and financing of a 2025 RAM PROMASTER 3500 # 3C6MRVJG2SE510335 ("Vehicle"); and

WHEREAS the Dealership thereafter sold and assigned its interest in the Contract to Ally Financial Inc. and

THEREAFTER, Ally Financial Inc. did assign all its rights, title and interest in and to the Contract to Ally Bank aka Ally Capital Corp. aka Ally Bank Corp. effective as of the date of the Contract.

AIS PORTFOLIO SERVICES, LLC, AS AUTHORIZED AGENT FOR ALLY FINANCIAL INC.

By: Paul Tangen
*(Signature)*

Name: Paul Tangen
*(Print Name of Signatory)*

Title: Its Authorized Agent

Date: 8/18/26

EXHIBIT 8

Execution Copy

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, Ally Bank a/k/a Ally Bank Corp. and Ally Capital Corp. (the "Company") does hereby make, constitute and appoint Ally Financial Inc. and Ally Servicing LLC (collectively the "Servicer") as its true and lawful attorney-in-fact, with full power of substitution, with respect to (i) all retail installment sale contracts, lease agreements, and loans serviced and administered by said attorney-in-fact for the benefit of Company, (ii) the collateral securing such retail installment sale contracts and loans and the vehicles related to such lease agreements, (iii) all security documents related to such contracts, loans and leases, and (iv) all payments and proceeds with respect to the foregoing (collectively, the "Property"), (a) to sign, acknowledge, file, appear as lien holder on, in the name, place and stead of Company, all certificates, documents and instruments relating to the Property, including, but not limited to, any instrument of assignment, certificate of title, notice of lien, assignment of lien, application for a certificate of title or duplicate of a certificate of title, application to register or transfer title, document to effect the notation of a lien upon a certificate of title or the assignment of such a lien, notice of any such assignment, application to register or transfer the rights as secured party under any policy of insurance, insurance claim, demand or request for premium refund, bankruptcy proof of claim, claim or demand against any dealer or against any person who may have an obligation to Company pursuant to or with respect to the Property, affidavit of repossession, bill of sale, notice of sale, lien release and odometer statement; (b) to authorize and consummate the sale and disposition of any part of the Property; (c) to collect and receive proceeds relating to or with respect to the Property; (d) to commence or participate, in the Servicer's own name or in the name of Company, a legal proceeding related to the Property under the Agreement, and in connection with any such proceeding to execute and deliver in the Servicer's or Company's name any notices, demands, claims, complaints, responses, affidavits or other documents or instruments; and (e) further as said attorney-in-fact may deem fit and proper to perfect the right, title and interest of Company in any part of the Property.

The undersigned further hereby gives and grants unto said attorney-in-fact full power and authority to do and perform every act necessary and proper to be done in the exercise of any of the foregoing powers as fully as the undersigned might or could do if personally present.

The undersigned further ratifies the actions taken by said attorney-in-fact in connection with the servicing and administration of retail installment sale contracts, loans and lease agreements by said attorney-in-fact prior to the execution date below for the benefit of Company.

This Power of Attorney shall continue in effect until superseded by a newer power of attorney between Company and Servicer or until revoked in writing by the undersigned or another authorized representative of Company. Anyone to whom this Power of Attorney is presented may rely upon it without further inquiry of the undersigned. A photocopy of this Power of Attorney shall have the same effect as an original, manually signed and acknowledged counterpart of this Power of Attorney.

IN WITNESS WHEREOF, the undersigned has executed this instrument this 28th day of January, 2020.

Ally Bank

By: ______________________
Name: Jeffrey A. Belisle
Title: Secretary

ACKNOWLEDGMENT

STATE OF MICHIGAN )
) ss.
COUNTY OF WAYNE )

On this 28th day of January, 2020, before me personally appeared Jeffrey A. Belisle, who acknowledged to me to be an officer and authorized representative of the above legal entity, and that he, as such officer and authorized representative, being fully authorized to do so, executed the foregoing instrument for the purposes therein contained as the free act and deed of said legal entity, and as his free act and deed as an officer and authorized representative of said legal entity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

DONNA M. DICICCO
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES May 25, 2025
ACTING IN COUNTY OF Wayne

Donna M. DiCicco
Notary Public
My Commission expires: ____________

EXHIBIT 9

PDP ELECTRONIC TITLE DOCUMENT

ELT*NC : ELT - NORTH CAROLINA
Title #: 0559251962039 Title Type :
Issue Date: 7/23/2025 Lic/Tag/Control #:

VIN . . . . . . . : 3C6MRVJG2SE510335

Vehicle Info. . : 2025 RAM

Odometer Reading : 000000000
Date . :
Status :

Owner Information . : DURAMAX HOLDINGS LLC
Co-Owner . . . . . :

Owner address . . . . : 12700 GENERAL DR

CHARLOTTE
NC 282736415

Lienholder Information: ALLY FINANCIAL
PO BOX 8132

COCKEYSVILLE
MD 210308132

2nd Lienholder Name :

ELT Sent Date . . . . . : 7/23/2025
Lien Type . . . . . . . : P
Owner Driver License# :

Brand code . . . . :

Release name . . . :
Release address 1 :
Rel City/State/Zip : ,

[redacted]

EXHIBIT 10

# J.D. POWER

08/17/2026

J.D. POWER Used Cars/Trucks

**Vehicle Information**

| | |
|---|---|
| Vehicle : | 2025 Dodge Commercial ProMaster 3500 159" W.B. High Roof Ext. |
| Region : | Southeastern |
| Period : | August, 2026 |
| VIN : | 3C6MRVJG2SE510335 |
| Mileage : | 51000 |

**J.D.POWER Used Cars/Trucks Values**

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Weekly Auction** | | | | |
| **Weekly Used** | | | | |
| Rough Trade-In | $33250.00 | $0 | 0 | $33250.00 |
| Average Trade-In | $35350.00 | $0 | 0 | $35350.00 |
| Clean Trade-In | $37450.00 | $0 | 0 | $37450.00 |
| Clean Retail | $41650.00 | $0 | 0 | $41650.00 |

**Selected Options**

| | Trade-In/Loan | Retail |
|---|---|---|

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D. Power